HOOD, Judge ad hoc.
This is an action for damages instituted by Alfred Jack against Harry J. Fonte-not and the Travelers Insurance Company, arising out of a motor vehicle collision which occurred on Louisiana Highway 10 about three miles west of the Town of Ville Platte, in Evangeline Parish, Louisiana. Plaintiff alleges that he sustained personal injuries as a result of this accident. The trial court rendered judgment in favor of plaintiff for the principal sum of $6,071.40 and from that judgment defendants have appealed.
The evidence establishes that a collision occurred at the above described location about 5:45 o’clock -P.M. on December 12, 1956, between a 1951 Mercury automobile, owned and being driven by plaintiff’s brother, Freddie Jack, and a 1955 Ford, owned by Curtis Circulation Company and being driven by defendant, Harry J. Fontenot. At the time of the accident plaintiff was riding as a guest passenger in his brother’s car, and both of these vehicles were being driven in a westerly direction, the Fonte-not car being in the rear. As the Jack automobile approached and started to turn to its left into a private driveway leading from the highway to the home of Freddie Jack, it was struck from the rear by the Fontenot car. As a result of this accident plaintiff sustained serious personal injuries.
*309 At the time the accident occurred there was in effect a public liability insurance policy issued by the Travelers Insurance Company to Curtis Circulation Company, covering Fontenot and the automobile which he was driving. The limits of liability provided in that policy were in excess of the amount demanded by plaintiff in this suit.
The highway at the site of this accident is a straight, level, hard surfaced, heavily traveled highway, running east and west, the hard surfaced portion being 18 feet wide, with six foot shoulders on each side. At the time the accident occurred it was dark, the weather was cloudy, and the highway was wet. The driveway leading to the home of Freddie Jack is located on the south side of the highway.
Plaintiff and the driver of the automobile in which he was riding testified that as they approached this private driveway, the driver held out his left hand indicating that he intended to make a left turn, and immediately thereafter the collision occurred. They testified that they did not hear a horn or any warning signal, and they did not see defendant’s car prior to the time of the accident. Defendant Fontenot testified that as he approached the Jack automobile from the rear he blew his horn and started to overtake and pass it, but that as he attempted to do so the Jack automobile was turned suddenly to the left into his lane of traffic. He testified that he then turned his vehicle to the right in an unsuccessful effort to avoid the collision, and that the point of impact was in the soitih or eastbound lane of traffic.
The State Trooper who arrived at the scene of the accident about 45 minutes after it occurred testified that he found skid marks made by the Fontenot vehicle and debris in the north or west-bound lane of traffic, which indicated that the point of impact was at least six inches north of the center line of the highway in the westbound lane of traffic. The left front portion of defendant’s automobile struck the left rear portion of the car in which plaintiff was riding.
The evidence establishes that the Jack automobile was being driven at a very slow rate of speed immediately prior to and at the time of the accident. Fontenot testified that he was driving about 35 or 40 miles per hour at the time he blew his horn, and that when he started to go around the lead vehicle he increased his speed to about 55 or 60 miles per hour. The evidence further indicates, however, that both of these vehicles had stopped at a service station approximately three-quarters of a mile east of the scene of the accident. The Jack automobile left this service station to proceed in a westerly direction at the time defendant’s automobile was driven into the station for the purpose of obtaining gasoline. The fact that defendant’s automobile was then serviced and thereafter overtook the Jack automobile within a short distance, indicates that defendant must have been driving at a faster rate of speed than that indicated in his testimony.
The trial judge concluded that the point of impact was in the north or westbound lane of traffic, that defendant’s automobile was being driven “at an extremely fast rate of speed” immediately prior to and at the time of the accident, and that the negligence of defendant Fontenot in these respects was a proximate cause of the accident. We feel that the evidence clearly supports that conclusion.
The trial judge also concluded that Freddie Jack, the driver of the automobile in which plaintiff was riding, was guilty of contributory negligence in attempting to make a left turn without first determining whether such a maneuver could be made safely. Judgment accordingly was rendered in the district court dismissing a companion suit filed by Freddie Jack, and no appeal has been taken from that judgment. Since the trial court also correctly held that any negligence of this driver could not be imputed to the present plaintiff, a passenger who had no control over the driving of *310 the automobile, the negligence of the driver of the Jack automobile is not at issue here. There is further no showing of any independent negligence on the part of plaintiff himself which may or could have contributed to the accident.
We conclude, therefore, that whether or not the driver of the Jack automobile was negligent in starting to make a left turn under the circumstances shown here, plaintiff is entitled to recover from defendants the damages which he sustained as a result of this accident, since the negligence of Fontenot in the operation of his car was a proximate cause of the accident and plaintiff was not guilty of contributory negligence.
The trial judge described the injuries sustained by plaintiff and made awards as follows:
“The medical testimony in this case was the testimony of Dr. Dupre who testified that Alfred Jack was hospitalized for approximately twenty-three (23) days immediately after the accident, and was re-admitted for another six (6) days in January, and that he treated Alfred Jack until September 18, 1957, or approximately eight (8) months. Dr. Dupre further testified that at the time that he last saw him, Jack was still suffering pain and that he was unable to state how long this man was suffering. Dr. George Briel who examined Alfred Jack testified that he took X-rays and that Alfred Jack suffered a fracture of the first coccygeal segment or the coccyx bone which is in laymen’s language, the tail bone. Dr. Briel further testified that such an injury is very painful, and that it is hard to determine the length of time that the pain will persist.
“The Court feels that certainly this man suffered severe injuries and that he did suffer pain for approximately eight (8) months, and that he, from the testimony of the lay witnesses, could not do the same type of work that he did prior to the accident. The Court feels that Five Thousand And No/100 ($5,000.00) Dollars for personal injuries would be in accord with the jurisprudence of this state for a person who suffered the type of injuries that Alfred Jack suffered.
“The medical expenses incurred by Alfred Jack as a direct result of this accident amount to One Thousand Seventy-One And 40/100 ($1,071.40) Dollars, and while defendant contends that such an amount is excessive, the record fails to indicate why it is excessive. Counsel for defendant cross-examined Dr. Dupre with particular reference to those charges, and the Court feels that the response or answers to the questions are not negatived by any other evidence and must therefore conclude that the charges are in accordance with customary charges elsewhere.”
We believe that the amounts awarded by the trial court are fair and proper for the injuries sustained by plaintiff.
The judgment of that court accordingly is affirmed.